WILLIAM S. SIRES, JR.,           )
    Plaintiff,               )
                     )
        v.                   )    C.A. No. 10-11993-MLW
                     )
MARY ELIZABETH HEFFERMAN, et al, )
    Defendants.              )

MEMORANDUM AND ORDER

WOLF, D.J.                                      June 21, 2011

I.   INTRODUCTION

On November 13, 2010, William S. Sires, who is now confined at the Souza-Baranowski Correctional Center ("SBCC") filed a self-prepared complaint, motions for leave to proceed in forma pauperis, and a motion for appointment of counsel. After the motions for leave to proceed in forma pauperis were denied without prejudice, Sires filed a new motion for leave to proceed in forma pauperis. He has also since filed a motion for service by the United States Marshal and a motion for court monitoring of his mail.

For the reasons stated below, the court is (1) granting the motion to proceed in forma pauperis; (2) ordering that summonses issue as to three defendants and that service be completed by the United States Marshal; (3) dismissing claims against all other defendants, except the John and Jane Doe defendants; and (4) denying without prejudice the motions for appointment of counsel and court monitoring of mail.

I.    BACKGROUND

     The present complaint concerns incidents at two different
prisons - SBCC and MCI Shirley.  Sires has named 29 defendants.[1]
The court summarizes the facts as alleged by Sires.

     A.    Factual Allegations

          1.    SBCC

     In June 2009, Sires was incarcerated at SBCC.  Thomas Dickhaut
was the SBCC superintendent.  Bruce Gelb and Anthony Mendonso were
deputy superintendents.  Jeffrey Guirin and Robert Blood were
captain correctional officers.

     On June 23, 2009, Sires was notified by a correctional officer
that he was being transferred to MCI Shirley.  At the time, Sires
had a "handicapped cell" due to an elongated medical history
requiring this accommodation.  Sires refused the transfer due to
his previous stays in that facility.

     Later that day, correctional officers approached Sires and
ordered Sires to "cuff up" - i.e., to permit himself to be
handcuffed through the food slot in the door.  Sires refused.  He
was then informed by a lieutenant and a mental care worker that the
move extraction team would come.  Once the extraction team was at
Sires's cell, Sires was ordered one more time to "cuff up"; he
refused.

_____

        [1] Sires filed the present complaint in two parts, which were
docketed as Docket No. 1 and Docket No. 1-1.

The move extraction team sprayed pepper spray or mace through the cell door food slot to disable Sires. No consideration was given for Sires's chronic health conditions–his heart condition, asthma, chronic obstructive pulmonary disease, and orthopedic problems. All eight members of the extraction team knew Sires and were familiar with Sires's health problems.

The extraction team entered Sires's cell while he sat on his bunk without displaying any resistance. Sires was hit in the chest with a plastic riot shield and forced face down on his bunk while extraction team members twisted his arm and foot, almost breaking his left foot and ankle. The injuries the extraction team inflicted caused Sires to suffer chest pains and to blank out temporarily. The extraction was recorded on videotape. Jose Ayala was one of the members of the extraction team.

Sires was transported via ambulance to the intensive cardiac care unit of a hospital, where it took 6.5 hours for Sires's heart to stabilize. Sires was also unable to walk or stand up and was on bed rest for another 72 hours.

### 2. MCI Shirley

After receiving medical treatment, Sires was transferred to MCI Shirley. Duane MacEachern was the superintendent. Alvin Notice and Scott Anderson were deputy superintendents.

Once Sires arrived at MCI Shirley, sergeant Thomas Fedele issued a disciplinary report against Sires for refusing the

transfer from SBCC to MCI Shirley.

On July 8, 2009 two correctional officers tried to house another inmate in Sires's "handicapped cell." Sires refused. Another disciplinary report was issued, even though, in 2007, the Massachusetts Health Department Community Sanitation Division had refused to waive the requirement of only one inmate per cell of certain size. This waiver was refusal was set forth in a letter to MacEachern. Despite the waiver refusal, Massachusetts Department of Correction ("DOC") Commissioner Harold W. Clarke, DOC Deputy Commissioner James Bender, and past MCI Shirley administrators proceeded to "double cell" prisoners – i.e., place two prisoners in a cell designed for a single inmate.

On July 27, 2009, captain correctional officer Jean Parent, who was in charge of all housing assignments at MCI Shirley, granted Sires single cell status. On March 25, 2010, Parent withdrew Sires's single cell status.

On March 25, April 5, June 15, and July 25, 2010, Sires refused the orders of MCI Shirley correctional staff to accept a double cell housing assignment. Sires was ordered to double cell even though he had had single cell status since he began serving his life sentence in 1974 and he had severe medical and mental health restrictions. Fedele was the disciplinary officer at some of the disciplinary hearings regarding these infractions. Sires's refusals to accept a double cell assignment resulted in him being

confined in isolation in the special management unit ("SMU") for 37 weeks. Michael Buscanera was a lieutenant correctional office in charge of the SMU. Donald Crowley was a captain correctional officer who was also in charge of the SMU.

On August 22, 2010 another inmate was caught hanging a line out of his cell window with a pill attached. Correctional officer Shawn Woodward caught the violation and assumed that the pill was coming to Sires. Woodward wrote a disciplinary report against Sires in regards to that event. On August 23, 2010, Fedele served the disciplinary report.

Sires asked for a continuance of the disciplinary hearing on Woodward's disciplinary report the week of September 20, 2010. Fedele initially only granted a seven-day continuance until Sires corresponded with Bender and MacEachern about this issue. Sires also sent a copy of the correspondences about double celling and the disciplinary hearing continuance to Massachusetts Secretary of Public Safety Mary Hefferman.

On August 28, 2010 a classification board was convened because of Sires's refusals to accept a double cell. It was recommended that Sires be transferred to MCI Concord. Sires appealed the board's decision. The appeal was granted in part; it was determined that Sires would remain at MCI Shirley and that Sires's single cell status would be reviewed.

Sires made attempts to see prison psychiatrist Dr. Geraldine

Walker, UMass Correctional Health ("UMCH") physician Dr. Maria Angeles, and UMCH Executive Director Dr. Arthur K. Brewer, for affirmation of Sires's medical/mental health need for a single cell. His requests for examinations were rebuffed or went unanswered. Angeles and UMCH nurse practitioner Carlos Flores were influenced by administrative and correctional goals rather than Sires's medical needs.

On September 24, 2010, a disciplinary hearing was held concerning the disciplinary report Sires received on August 23, 2010. Sergeant correctional officer Kevin Farley was the disciplinary officer at the hearing. Woodward gave false and unsupported testimony at the hearing. Sires was found guilty. MacEachern denied the appeal.

On November 11, 2010, a second classification board was convened based on Sires's cell assignment refusals and the guilty finding on the disciplinary report concerning the August 23, 2010 disciplinary report. It was determined that Sires would remain at MCI Shirley.

In both classification review hearings, the process was unduly influenced by the fraudulent disciplinary report of August 23, 2010. MacEachern and Anderson unduly influenced the procedures to retaliate against Sires and so that Sires would be removed from the facility.

On November 13, 2010, Sires, attempted to meet with Dr.

Angeles about his need for a single cell.  Dr. Angeles refused to speak with him.[2]

B.    Claims and Defendants

In addition to all of the individuals referenced by name in the summary of the factual allegations, Sires names the following parties as defendants: Paul Dipaola, deputy commissioner of correction; John and Jane Doe, correctional officers at SBCC who were members of the extraction team that removed Sires from his cell on June 23, 2009; director of UMCH; Thomas Quinlivan, captain correctional officer at MCI Shirley; and, Edward McGonigle, a captain correctional officer at SBCC.  In addition, Sires lists in the caption of the complaint Dr. Augustus Enaw and Terri Marshall as defendants, but the body of the complaint does not refer to these two defendants.

Sires brings five causes of action.  In each cause of action, Sires refers to the "defendants" collectively.  He does not name individual defendants in each cause of action.

The first three causes of action are based on the June 23, 2009 aggression by members of the move extraction team at SBCC. (See First, Second, and Third Causes of Action, Docket No. 1, at 7. These claims are essentially duplicative.  Sires alleges therein that the defendants violated his rights under the Fourth, Fifth,

_____

    [2] Sires does not allege that he actually ever occupied a double cell.

7

Sixth, Eighth, and Fourteenth amendments. He also claims that the defendants violated Articles X, XI, and XII of the Massachusetts Declaration of Rights, which Sires characterizes as provisions guaranteeing freedom from cruel and unusual punishments, due process of law and equal protection. He also alleges that the defendants violated Chapters 124 through 127 of the Massachusetts General Laws.

Sires's fourth and fifth causes of action concern the defendants' alleged attempts to force Sires to double cell at MCI Shirley. In the fourth cause of action Sires claims:

> The defendant(s) in their act(s), action(s), conspiracies and untoward conduct towards the plaintiff in attempting to totally disregarding his medical/psychiatric/psychological needs in . . . forcing him to occupy a prison cell architecturally designed for one (1) inmate, to share w/another inmate (double celling) . . . did violated his Fourth, Sixth, Eighth and Fourteenth Amendment right(s) of the Bill of Rights to the U.S. Constitution and Arts. 10-12 of the Declaration of Rights to the Constitution of the Commonwealth of Massachusetts.

Compl., Docket No. 1-1, at 13.

In the Fifth Cause of Action, Sires alleges that the defendants violated his federal and state rights by not complying with 103 C.M.R. § 430 concerning inmate discipline.

II. DISCUSSION

A. <u>Motion for Leave to Proceed In Forma Pauperis</u>

Upon review of the motion for leave to proceed <u>in forma pauperis</u>, the court concludes that Sires has demonstrated that he

is without income or assets to prepay the $350.00 filing fee. Therefore, the motion is being allowed. Pursuant to 28 U.S.C. § 1915(b)(1), the court assesses an initial partial filing fee of $2.23. The remainder of the fee, $347.77, shall be collected in accordance with 28 U.S.C. § 1915(b)(2).

B. <u>Screening of the Complaint</u>

1. <u>Court's Authority to Screen the Complaint</u>

When a plaintiff seeks to file a complaint without prepayment of the filing fee, summonses do not issue until the court reviews the complaint and determines that it satisfies the substantive requirements of 28 U.S.C. § 1915. Similarly, under 28 U.S.C. § 1915A, prisoner complaints in civil actions that seek redress from a governmental entity or officers or employees of a governmental entity are also subject to screening. Both § 1915 and § 1915A authorize federal courts to dismiss a complaint <u>sua</u> <u>sponte</u> if the claims therein are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief against a defendant who is immune from such relief. <u>See</u> 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b). In conducting this review, the court liberally construes the complaint because the plaintiff is proceeding <u>pro</u> <u>se</u>. <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972).

2.  Rule 8(a) of the Federal Rules of Civil Procedure

To state a claim for relief, a complaint must comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Under this rule, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At a minimum, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Calvi v. Knox County, 470 F.3d 422, 430 (1st Cir. 2006) (quoting Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 66 (1st Cir. 2004)). This means that the statement of the claim must "at least set forth minimal facts as to who did what to whom, when, where, and why." Id. (quoting Educadores, 367 F.3d at 68). Although the requirements of Rule 8(a)(2) are minimal, "minimal requirements are not tantamount to nonexistent requirements." Id. (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)). The plaintiff's obligation to provide the grounds of his claim "requires more than labels and conclusions." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A court is not "bound to accept as true a legal conclusion couched as a factual allegation," and "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. (quoting in part Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of a cause

10

action, supported by mere conclusory statements, do not suffice.").

To provide the notice required under Rule 8(a), a plaintiff cannot "lump" defendants together when it cannot be reasonably inferred that all of the defendants were involved in the alleged misconduct, or it is otherwise not clear to which defendant or defendants the plaintiff is referring. See Bagheri v. Galligan, 160 Fed. Appx. 4, 5 (1st Cir. 2005) (upholding district court's dismissal of action where the original complaint did not "state clearly which defendant or defendants committed each of the alleged wrongful acts" and the plaintiff had failed to cure the pleading deficiencies); Atuahene v. City of Hartford, 10 Fed. Appx. 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff]'s complaint failed to satisfy [the] minimum standard of pleading under Fed. R. Civ. P. 8(a).").

C.    Direct Involvement Required Under 42 U.S.C. § 1983

Sires alleges that the defendants have violated his rights under the Fourth, Sixth, Eighth and Fourteenth amendments of the United States Constitution.[3]    Claims for violations of federal

---

[3] The court cannot discern any manner in which, under the alleged facts, Articles X, XI, and XII of the Massachusetts Declaration of Rights or Chapters 124 through 127 of the Massachusetts General Laws afford Sires greater rights than those bestowed by the United States Constitution under the alleged facts. Accordingly, the court will limit its discussion to possible violations of the United States Constitution.

rights by state actors must be brought under 42 U.S.C. § 1983 ("§ 1983"). See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001) ("[A] litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but [rather] must utilize 42 U.S.C. § 1983.") This statute provides that any "person," acting under the color of state law, who "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

"It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable.'" Velez-Rivera v. Agosto-Alicea, 437 F.3d 146, 156 (1st Cir. 2006) (quoting Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005)). "In § 1983 cases, 'supervisors are not automatically liable for the misconduct of those under their command. A plaintiff must show an affirmative link between the subordinate officer and the supervisor, whether through direct participation or through conduct that amounts to condonation or tacit authorization.'" Id. (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)); see also Bonner v. Outlaw, 552 F.3d 673, 679 (8th Cir. 2009) ("[A] warden's general responsibility for supervising a prison is insufficient to establish personal

liability.").

Therefore, unless Sires has alleged direct participation by a defendant in conduct that violates his federal rights, Sires has failed to state a cause of action under § 1983 against that defendant. Sires has made conclusory allegations that each of the defendants had knowledge of, and were complicit in all the constitutional violations set forth in the complaint, but Sires does not make actual factual allegations that would support such speculation. The court cannot credit these vague and speculative allegations of participation and liability.

1. <u>Claims Concerning SBCC</u>

The three causes of action that Sires brings related to injuries he suffered at SBCC concern the June 23, 2009 cell extraction. Although Sires brings these claims against the "defendants" collectively, with the exception of allegations concerning the move extraction team members (John and Jane Doe; Ayala), Sires does not allege any direct participation in the extraction by any other defendants. He does not allege that other defendants on staff at SBCC (Dickhaut, Gelb, Mendonso, Guirin or Blood) or any other defendant planned, ordered, physically participated in, supervised, or otherwise were involved in the extraction.

Accordingly, the first, second and third causes of action are dismissed against all defendants except John and Jane Doe and

Ayala. The clerk shall issue summons as to Ayala. At this time, the clerk shall not issue summonses as to John and Jane Doe because these are fictitious names. Although the use of fictitious names to identify defendants is not favored, situations may arise where the identity of an alleged defendant cannot be known prior to the filing of a complaint. See Martínez-Rivera v. Ramos, 498 F.3d 3, 8 (1st Cir. 2007). If, through discovery, Sires discovers the true name of these defendants, he "should act promptly to amend the complaint to substitute the correct parties and to dismiss any baseless claims." Id. at 8 n.5. He may then also file a motion for issuance of summonses for these defendants.

    2. <u>Claims Concerning MCI Shirley</u>

    a. <u>Fourth Cause of Action: Double Celling</u>

In his fourth cause of action, Sires alleges that the defendants' attempts to force Sires to accept a double cell assignment violated his rights under the Fourth, Sixth, Eighth and Fourteenth amendments. As the Fourth, Sixth, and Fourteenth amendments are inapplicable under these allegations, the court will consider this claim as one for a violation of the Eighth Amendment.

The Eighth Amendment's prohibition on "cruel and unusual punishments," U.S. Const. amend. VIII, proscribes only those conditions of confinement which deprive an inmate of "the minimal civilized measure of life's necessities," <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981). Double cell assignments are not a per se

14

violation of the Eight Amendment. <u>See</u> <u>Cote v. Murphy</u>, 152 Fed.
Appx. 6, 7 (1st Cir. 2005) (the mere authorization of double cell
assignments or the execution of such a policy does not offend the
constitution). Therefore, to the extent Sires attempts to hold any
defendant liable simply because he or she approved or instituted
a double cell policy, the claim fails to state a claim for relief.

Nonetheless, "in rare cases" a double cell policy "might
amount to an unlawful practice when combined with other adverse
conditions." <u>Id.</u> For the sole purpose of reviewing this complaint
under 28 U.S.C. §§ 1915(e)(2) and 1915A, the court will assume
that, given Sires's medical condition, requiring him to double cell
violated the Eighth Amendment.[4] Therefore, any defendant who was
directly involved in this violation remains a defendant in the
action. Construing the complaint very generously, the court
concludes that summonses shall issue as to Parent, who revoked
Sires's single cell status, and Farley, who imposed disciplinary
sanctions on Sires.[5] The fourth cause of action shall be dismissed
as to all other defendants.

---

[4] Of course, the defendants are free to challenge this
assumption in a dispositive motion or at any other stage of the
litigation.

[5] The court notes that Sires cannot obtain damages based on a
defendant's attempt to force him occupy a double cell unless he
makes a showing of physical injury. <u>See</u> 42 U.S.C. § 1997e(e) ("No
Federal civil action may be brought by a prisoner confined in a
jail, prison, or other correctional facility, for mental or
emotional injury suffered while in custody without a prior showing
of physical injury.").

b. <u>Fifth Cause of Action: Disciplinary Proceedings</u>

In the fifth cause of action, Sires alleges that defendants did not comply with DOC regulations concerning inmate discipline. Although Sires does not specify in the cause of action, the disciplinary procedures that allegedly ran afoul of state regulations, the court infers from the factual allegations that Sires is challenging the disciplinary proceeding concerning the August 23, 2010 disciplinary report. As noted above, Sires alleges that another inmate made a "pill line". Although Sires alleges that Woodward, who authored the disciplinary report, thought that the "pill line" was going to Sires, Sires complains that Woodward later gave false testimony at the disciplinary hearing. Sires also alleges that Farley wrongly found him guilty of the disciplinary infraction, and that MacEachern wrongly denied the appeal. Sires also alleges that this "fraudulent" disciplinary process wrongly became a factor in his classification hearings.

Sires brings this cause of action under the Fourth, Fifth, Sixth, Eighth, and Fourteenth amendments. However, only the Fourteenth amendment's guarantee of due process appears to be possibly relevant. The court will conduct its analysis accordingly.

The due process clause of the Fourteenth Amendment "protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish

that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005).  An inmate does not, however, have a liberty interest in avoiding a particular condition of confinement unless the condition "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 222-23 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

In Sandin, for example, the Court held that a prisoner did not have a liberty interest in avoiding disciplinary segregation.  See Sandin, 515 U.S. at 485-86.  The Court explained that the disciplinary segregation did not impose an atypical, significant departure from the basic conditions of the inmate's sentence.  See id.  Similarly, in Dominique v. Weld, 73 F.3d 1156, 1159-60 (1st Cir. 1996), the First Circuit applied Sandin to hold that an inmate who had been participating in a work release program did not have a liberty interest in avoiding transfer to a higher security facility.  Acknowledging that "there is a considerable difference between the freedoms [the inmate] enjoyed when he was in work release status and the conditions of incarceration at a medium security facility," the First Circuit nonetheless concluded that the transfer did not constitute an atypical hardship as compared to the ordinary incidents of prison life.  Id. at 1160.  The court reasoned that the transfer did not affect the duration of his sentence or subject the prisoner to "conditions no different from those ordinarily experienced by large numbers of other inmates

17

serving their sentences in customary fashion." <u>Id.</u>

Applying <u>Sandin</u> to the present action, the court cannot infer from any of the plaintiff's allegations that the allegedly fraudulent disciplinary procedure imposed "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 545 U.S. at 484. According to Sires's allegations, the worst possible outcome of a guilty finding on the August 23, 2010 disciplinary report was a transfer to MCI Concord. Because Sires did not have a liberty interest in any particular classification or in avoiding transfer to MCI Concord, he was not entitled to any particular process, even if the process he did receive violated state regulations. <u>See</u> <u>Sandin</u>, 515 U.S. at 482-84; <u>see also</u> <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir. 2003) (prisoners do not have a liberty interest in a particular grievance procedure).[6] Accordingly, the fifth cause of action is dismissed as to all defendants.

C. <u>Motion for Appointment of Counsel</u>

Although the court "may request an attorney to represent any person unable to afford counsel," 28 U.S.C. §1915(e)(1), a civil plaintiff lacks a constitutional right to free counsel, <u>see</u>

---

[6] In addition, the issuance of a false disciplinary report does not deprive an inmate of a protected liberty interest. <u>See</u> <u>Gay v. Shannon</u>, 211 Fed. Appx. 113, 116 (3d Cir. 2006); <u>Asad v. Bush</u>, 170 Fed. Appx. 668, 672 (11th Cir. 2006); <u>Jackson v. Madery</u>, 158 F.3d Appx. 656, 662 (6th Cir. 2005).

<u>DesRosiers v. Moran</u>, 949 F.2d 15, 23 (1st Cir. 1991). The court does not have the funds to pay attorneys to represent plaintiffs in civil cases, and it is very difficult for the court to find attorneys who will accept appointment as <u>pro bono</u> counsel. To qualify for this scarce resource, a party must be indigent and exceptional circumstances must exist such that the denial of counsel will result in fundamental unfairness impinging on the party's due process rights. <u>See</u> <u>DesRosiers</u>, 949 F.2d at 23. To determine whether there are exceptional circumstances sufficient to warrant the appointment of counsel, a court must examine the total situation, focusing on the merits of the case, the complexity of the legal issues, and the litigant's ability to represent himself. <u>See</u> <u>id.</u> at 24. Because the defendants have not been served with or responded to the complaint, the court cannot yet determine whether exceptional circumstances exist that would justify appointment of counsel. The court is therefore denying the motion without prejudice.

III. ORDER

Accordingly, it is hereby ORDERED that:

(1) The motion for leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u> (Docket No. 15) is ALLOWED. Pursuant to 28 U.S.C. § 1915(b)(1), the court assesses an initial partial filing fee of $2.23. The remainder of the fee, $347.77, shall be collected in accordance with 28 U.S.C. § 1915(b)(2). The clerk shall send a copy of this order to the

treasurer of the institution having custody of the plaintiff.

(2)   Summonses shall issue as to Ayala, Parent, and Fedele.

(3)   With the exception of claims against John and Jane Doe, claims against all other defendants are DISMISSED WITHOUT PREJUDICE for failure to state a claim upon which relief may be granted. Further, the first, second and third causes of action are DISMISSED as to Parent and Fedele, and the fourth and fifth causes of action are DISMISSED as to Ayala and John and Jane Doe.  If Sires desires to cure the pleading deficiencies as to the dismissed claims, he may amend the complaint in accordance with Fed. R. Civ. P. 15.

(3)   The motion for service of process by the United States Marshal (Docket No. 11) is ALLOWED to the extent that Sires asks that service be completed by the United States Marshal.  The United States Marshal shall serve a copy of the summonses, complaint, and this order upon the defendants for whom summonses have issued as directed by plaintiff with all costs of service to be advanced by the United States.  The plaintiff is responsible for providing all necessary forms and documents for service to the United States Marshal.

(4)   The plaintiff shall complete service within 120 days of the date of this order.

(5)   The motion for appointment of counsel (Docket No. 4) is DENIED WITHOUT PREJUDICE.

(6)   The motion for court monitoring of mail (Docket No. 16)

is DENIED WITHOUT PREJUDICE.  The motion appears to be moot as Sires is now at a different institution than he was when he filed the motion.

_____/s/ Mark L. Wolf_____
UNITED STATES DISTRICT JUDGE